## Columbia Coal Company *versus* Miller *et al.*

1. Miller, lessee of a colliery, at a rent per ton of coal mined, agreed with plaintiffs to sell them all the coal mined, they agreeing to pay him all cost of mining expenses, &c.; if plaintiffs should be in default for a time specified, in payment of the cost, expenses, &c., Miller might treat the agreement forfeited. On even date with the agreement Miller mortgaged his leasehold as collateral security for his performance of his covenants in the agreement. The plaintiffs made default in payment of expenses, &c., for the time specified, and Miller gave them notice that he would annul the lease at a time he named; after that time the plaintiffs, alleging that Miller had broken the covenants in his lease, sued out the mortgage. *Held*, that nothing was due on it, as the agreement had been forfeited for the breach of plaintiffs' own covenants in it.

2. Miller had confessed judgment to other persons, and after the breach of plaintiffs' covenants, and notice to them of the annulling of the agreement,

[Columbia Coal Co. v. Miller.]

the leasehold was sold under the judgments. *Held*, that this was not a breach by Miller.

3. The plaintiffs not having performed their covenants had released Miller and enabled him to treat the mining agreement as at an end.

March 1st 1875.  Before AGNEW, C. J., SHARSWOOD, WIL-LIAMS, MERCUR, GORDON and PAXSON, JJ.

Error to the Court of Common Pleas of *Schuylkill county* : No. 331, to January Term 1872.

On the 18th of August 1868, a scire facias was issued by the Columbia Coal Company on the mortgage, hereafter mentioned, against August C. Miller and James C. Neil, terre-tenant.

On the 16th of March 1869, judgment was entered in it, by confession by virtue of a warrant of attorney, against the defendants for $400,000.

On the 15th of February 1870, the court made a rule to open the judgment absolute, and directed an issue " to ascertain the amount due on the judgment for which execution may issue," the parties to stand plaintiff and defendant in the issue as they did in the scire facias.

The facts in the case were as follows :—

On the 1st of March 1866, the plaintiff and August C. Miller entered into an agreement which recited, that on the 6th of Feb. 1863, a lease had been made to Miller of certain coal land in the Shenandoah Valley, Schuylkill county, for fifteen years ; that Mil-ler covenanted in the lease to pay rent for the coal mined at rates specified in the lease ; and that there were other stipulations and covenants in the lease, for which reference was made to the lease ; that Miller had opened a colliery on the premises and was pre-pared to mine and send to market from the colliery yearly 50,000 tons of coal and upwards. It was then covenanted that Miller should sell and deliver, as was therein specified, to the plaintiff, all the coal not less than 50,000 tons yearly, which should be mined at that colliery during the remaining part of the term, and as much more as the plaintiff might require, to the full capacity of the colliery. The 5th clause of the covenant was: that Miller, in the most ap-proved and economical manner, would work the colliery to its full capacity, &c., and preserve his lease from forfeiture by his breach or non-performance of its covenants; that the plaintiffs would pay Miller the full cost of mining and preparing the coal for market, including the rent to be paid thereon, the maintenance or removal of the improvements at the mines, and all the covenants of the lease which Miller was bound to keep, and all expenses chargeable to the maintenance and working of the colliery ; that there should be transferred to Miller 9375 shares of the plaintiffs' stock at $100 per share.

" That on or before the 10th day of each month estimates of the cost of mining expenses for the last preceding month shall be

furnished by said Miller to the Columbia Coal Company, which amount shall then be paid by said company as soon as practicable thereafter ; and the said Miller shall then, within five days after his pay day for the said preceding month, furnish to said company a detailed statement, showing the disbursements and payments made by him for the expenses of said preceding month, and the said August C. Miller shall further furnish to said company a daily report of the number of cars loaded or filled at the mines for said company, and shall on or before Wednesday of each week, send the weight scale report of the amount of tonnage sent over regular railroad weigh scales for the preceding week.

" In case the Columbia Coal Company are in default for the period of four consecutive months in the payment of the running and other expenses as aforesaid, the said August C. Miller, his executors or administrators, may sell in the open market, or in such manner as his or their judgment seem best, the coal that may be thereafter mined and taken away from said colliery, until the full amount in arrears as aforesaid, as well as accrued cost of mining coal thus sold shall be fully paid, providing, however, that if the proceeds arising from such sales of coal by the said August C. Miller do not, within the period of four months next ensuing the first period of five months aforesaid, fully reimburse the said August C. Miller, for such arrears and accrued cost of mining, then it shall be optional with the said August C. Miller, his executors or administrators, to treat the contract as forfeited by the said the Columbia Coal Company, and the said August C. Miller shall be under no further obligations or liability to said the Columbia Coal Company in respect thereto, or for any payment or payments theretofore made on account of the same."

On the 6th of April 1866, an agreement was entered into between the plaintiffs of the first part and Miller, M. F. Maize and J. O. Rhoads of the second part. This agreement recited the agreement of March 1st 1866; also, that by a single bill, bearing even date with this agreement, Miller, together with Maize and Rhoads, acknowledged to owe the plaintiffs $400,000 ; also, that by a coal-lease mortgage, bearing even date with this agreement, he had mortgaged his lease to secure the single bill above-mentioned, and had also made his warrant of attorney to F. W. Hughes, Esq., &c., to confess judgment on any writ of scire facias issued on the mortgage for the full amount of the single bill ; it was then agreed that the single bill and mortgage had been given as collateral security for the performance by Miller of the covenants, &c., in the agreement between him and the plaintiffs of March 6th 1866; that no scire facias should issue on the mortgage if Miller kept and performed his covenants, &c., in the last-mentioned agreement; that if Miller should not keep these covenants, &c., the plaintiffs might at their option forthwith sue out a scire facias on the mort-

[Columbia Coal Co. *v.* Miller.]

gage and proceed at once to obtain judgment thereon, and immediately by virtue of the warrant of attorney above-mentioned judgment might be confessed for $400,000 ; that before such judgment should be confessed affidavits of the president, or one of the directors, and the superintendent, general agent or chief clerk of the plaintiffs should be filed in the scire facias, setting forth in detail when, wherein, what manner and to what extent any or all of the conditions, covenants and stipulations in said agreement have been broken or violated by August C. Miller, his executors or administrators, and the actual amount of damages and loss occasioned to said company by the violation as aforesaid of said covenants, conditions and stipulations in said agreement; and also that there be filed therewith in said court, proof of service of a copy or copies of said affidavits upon the said August C. Miller, Michael F. Maize and Jacob O. Rhoads, &c.

" If at any time after judgment confessed, and before a sale of the mortgaged premises under and by virtue of an execution issued thereon, the said August C. Miller, Michael F. Maize and Jacob O. Rhoads, &c., shall pay to said company the amount of actual damages sustained as aforesaid, that thereupon the power of said company to issue an execution on said judgment shall cease until the said company shall subsequently suffer damage and loss by reason of the violation of said agreement, when a new execution may issue upon said judgment upon the filing of affidavits and proof of service as aforesaid, which said last-mentioned execution may be stayed in like manner as aforesaid, and before any subsequent executions shall issue similar affidavits and proof of service must be filed, with power on the part of the said Miller, Maize and Rhoads, or either of them, to stay the same as herein before set forth.

" It is hereby understood that, * * * neither said sum of $400,000, nor any part thereof, shall or may be collected from the said August C. Miller, Jacob O. Rhoads and Michael F. Maize, or either of them, other than from a sale of the premises described in said mortgage, and that upon the sale of the same, said bill single and judgment upon the mortgage shall be considered paid an satisfied."

There was also a separate warrant of attorney, dated April 6th 1866, to Mr. Hughes from Miller, reciting the mortgage and authorizing the attorney in any scire facias, &c., on the mortgage to appear for Miller and confess judgment against him for $400,000.

After this scire facias was issued affidavits were made by the secretary and one of the directors of the plaintiffs, setting forth, as is provided in the agreement of March 1st 1866, breaches by the defendant of the covenants, &c., in the agreement of April 6th 1866, and averring that the plaintiff had sustained actual loss, &c., to the amount of at least $50,000. Thereupon the judgment on which this issue was framed was entered.

The case was tried May 11th 1870, before Ryon, P. J.

The plaintiffs and defendant, under numerous objections, gave in evidence the foregoing facts.

Under objection and exception, the defendant gave in evidence judgments, entered August 6th 1867, viz.: Hammett & Neil against Miller, Son & Rhoads, by confession for $50,000; and same plaintiff against Miller & Maize, for $25,000, by transcript from the District Court of Philadelphia; also, fi. fas. on these judgments, issued September 3d 1867, under which Miller's leasehold and fixtures were levied on, and sold December 14th 1867 to E. S. Sillyman—the leasehold for $10,000, and the personal property for $1005.50. The purchase by Sillyman was in trust for himself and other creditors: Neil, the terre-tenant in this case, was afterwards substituted as trustee in place of Sillyman.

A. C. Miller, defendant, testified that M. Maize and J. O. Rhoads were partners with him in the lease; the firm name was A. C. Miller & Co. Maize was president of the Columbia Coal Co. The coal was mined in the name of A. C. Miller & Co., placed to the credit of the plaintiffs, and shipped to Miller, Son & Co., Philadelphia. Witness complied with the stipulations of the agreement, mined all that he could under the agreement. The coal mined and shipped did not pay expenses; it was so for about twelve months; at the end of nine months the arrears were about $25,000; the plaintiffs had never paid witness anything under the agreement. Witness demanded money from the president often, none having been furnished; it was in June 1867 that the arrears were $25,000; he then told the president he would annul the agreement at the end of the eight months; he annulled the agreement in November 1867.

There was evidence also that defendant had given like notice to the secretary and treasurer and directors in New York, where the principal office of plaintiffs was; and had also forwarded there to them monthly statements of the balances against plaintiffs; also, that part of the expenses claimed by defendant was incurred in sinking additional slopes. There was evidence in rebuttal for the purpose of showing fraud in the sheriff's sale, and that the property had been bought for the benefit of Miller & Co.

There was much other evidence given on the trial; the facts and evidence above given will sufficiently elucidate the questions decided by the Supreme Court.

The court below charged:—

" The evidence is that the Columbia Coal Company directed the sinking of the slope, and also it is in evidence that this was necessary to comply with the covenants of the lease and to keep the shipments or production of the colliery to the minimum number of tons required by the lease. There is no contradiction in this testimony. It is quite clear to us that under the agreement of

[Columbia Coal Co. *v.* Miller.]

March 1st 1866, the slope expenses are embraced, which would show on the close of December 1867, a very large balance in favor of Miller, due him by the Columbia Coal Company. ·This balance started in December 1866, at $3505.47, and varied through the year, becoming very large at times, and for December 1867, it was $25,299.16 ; more than eight months elapsed successively, and this balance was not paid to Miller, nor has a tender been made. Now, to entitle the plaintiff to recover it must be shown that the company had complied with the covenants in the agreement of March 1st 1866, or show a reason which would discharge the company from such compliance. This issue is substantially the same as if covenant had been brought by the company against Miller on this agreement of March 1st 1866, and a plea of covenants performed *absque hoc,* &c., &c.

" The company did not comply with the 5th clause of the agreement, as appears from all the evidence in the case. There are other questions in the case which may be equally decisive, but as we think this is sufficient to prevent a recovery, we will not notice the other questions."

The jury found for the defendant.

The plaintiffs took a writ of error and assigned fifteen errors. These raised the questions of fraud on the part of the defendant in relation to the sheriff's sale, the sufficiency of the demand for the expenses and of notice of intention to annul the agreement, and the propriety of the peremptory instructions of the court.

*L. Bartholomew* and *F. W. Hughes* (with whom was *G. E. Farquhar*) for plaintiffs in error.—Notice to an individual corporator, not lawfully constituted an organ of communication, is not notice to the corporation: Bank of Pittsburg *v.* Whitehead, 10 Watts 402 ; Wilson *v.* McCullough, 11 Harris 440 ; Langolf *v.* Seiberlitch, 2 Parsons 64. Even notice to the proper officer is not binding if he acts for himself in dealing with the corporation as if he had no official relations with it : Angell and Ames on Corp., sect. 308 ; Winchester *v.* Baltimore Railroad Co., 4 Md. 231.

*J. W. Ryon* and *J. H. Campbell,* for defendant in error.

Judgment was entered in the Supreme Court, March 8th 1875, PER CURIAM.—We cannot discover what many of the matters assigned for error had to do with the issue tried in this case. The single bill and mortgage were given as a security for the performance of the covenants in the agreement for working the mines. The judgment on the mortgage was confessed under the stipulations in the agreement, and upon affidavits setting forth the breaches alleged. The issue was to determine whether anything was due and owing on the mortgage, and. this depended upon the

[Columbia Coal Co. *v.* Miller.]

breaches of the covenants assigned.   Hence, the real question was, whether the defendant, A. C. Miller, had broken his covenants, or any of them, so as to entitle the plaintiffs to judgment, on the security held for their protection.   The evidence was clear and beyond dispute, that plaintiffs broke the covenant to be performed on their part, by omitting for more than the stipulated time, to pay the sums they were bound by the agreement to pay to the defendant, Miller, which, by the terms of the agreement, gave him the right "to treat the contract as forfeited."   This took place long before the sheriff's sale of Miller's interest and estate in the colliery, and he not only gave notice to Maize, as the president of the Columbia Coal Company, but to the officers in New York, and forwarded monthly statements of the balances against the company.

Under these circumstances the sheriff's sale could not be set up as a breach on the part of Miller, who thus had a right to treat the contract as forfeited by reason of the plaintiffs' precedent breaches, continuing over eight months.   And if the plaintiffs relied on the sheriff's sale as a breach, it is not easy to perceive how the fact of collusion, in effecting it, could affect the issue being tried.   The breach then would consist in the fact of the sale, and not in the means of effecting it.   If, by collusion or fraud, the force of the sale was destroyed, it might be argued against the plaintiffs, that there being no legal sale, there was no sufficient breach.   But in this issue the sale was not really involved, for the clear and uncontradicted evidence was, that the company had not performed its own covenants, and therefore had released the defendant Miller, and enabled him to treat the mining contract as at an end.

Judgment affirmed.